UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEREMY SCHUH,

                Petitioner,

v.                                        CASE NO. 08-11393
                                        HONORABLE GERALD E. ROSEN

WILLIE O. SMITH,

                Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY
## GRANTING THE AMENDED HABEAS CORPUS PETITION

        This matter is pending before the Court on petitioner Jeremy Schuh's amended habeas

corpus petition under 28 U.S.C. § 2254.  The petition challenges a Washtenaw County Circuit

Court's decision to revoke Petitioner's probation for failure to be tethered in a timely manner.

Petitioner contends that (1) he is innocent of the charged conduct, (2) his appellate attorney was

ineffective, (3) the trial court was biased, (4) he was denied due process, (5) his probation officer

gave perjured testimony at the revocation hearing, (6) the evidence was insufficient to establish a

probation violation, (7) the trial court engaged in *ex parte* communications, (8) the prosecutor

withheld exculpatory evidence from him, and (9) trial counsel was ineffective.  The Court has

determined that the trial court violated Petitioner's right to due process of law in 2009 by failing

to give adequate consideration to a probation officer's affidavit, which tended to contradict the

officer's testimony at the 2004 probation violation hearing.  Accordingly, the amended habeas

corpus petition will be granted.

## I.  Procedural History

### A.  The Guilty Plea, Sentence, Probation Violations, and Direct Appeal

On May 1, 2003, Petitioner pleaded guilty in Washtenaw County Circuit Court to receiving and concealing a stolen firearm.  *See* Mich. Comp. Laws § 750.535b(2).  In an unrelated case, Petitioner pleaded guilty to breaking and entering a vehicle to steal property worth $200 to $1,000.  *See* Mich. Comp. Laws § 750.356a(2)(b)(i).  The trial court sentenced Petitioner to two years on probation for the crimes.  On June 4, 2004, Petitioner pleaded guilty to violating a condition of probation that required him to complete a treatment program for substance abusers.  The trial court then sentenced Petitioner to one year in jail, with sentencing credit of almost 300 days, followed by ninety days of being connected to a tether.

Petitioner subsequently was charged with violating a home-confinement agreement by leaving his residence and failing to return to it.  A warrant was issued, and on July 22, 2004, the trial court held a hearing on the charge.  Petitioner testified at the hearing that he "passed out" on the day in question after an argument with his father and was taken to the hospital.  The trial court concluded that Petitioner had an excuse for being out of place.  The trial court nevertheless ordered Petitioner to become tethered to a residence other than his parents' home by August 5, 2004.  The court warned Petitioner that he would be sent to prison or boot camp if he did not comply with the court's order.  On August 5, 2004, the trial court held a brief hearing and notified Petitioner that he would be taken into custody because he was not yet tethered and because there was a new felony warrant for his arrest.

On November 18, 2004, the trial court held a probation violation hearing.  Petitioner's probation officer, Rodney Pollard, testified at the hearing that Petitioner had informed him on

2

July 27 that he would be living with a family in Canton, but that Petitioner was not tethered by

August 5, 2004.  Mr. Pollard stated that, although Petitioner called him frequently and left

messages for him regarding where he was and what he was doing, the calls and messages did not

pertain to permanent tether placement.  Mr. Pollard also stated that he did not recall his

supervisor transferring Petitioner's telephone call to him at approximately 8:05 a.m. on August

5, 2004.

The defense witnesses at the hearing included Petitioner, his mother Cathy Schuh, his

father Jeffrey Schuh, and a family friend named Deborah Polak.  Mrs. Schuh testified that she

and Petitioner met with probation officer Rodney Pollard on July 27, 2004.  They discussed

having Petitioner move to Canton to live with Mrs. Schuh's friend, Deborah Polak.  Mrs. Schuh

testified that she provided Mr. Pollard with Ms. Polak's telephone number, but that she did not

have Ms. Polak's address at the time.  According to Mrs. Schuh, Mr. Pollard stated that it would

be alright to call him and let him know the address.  Petitioner's father, Jeffrey Schuh, testified

that Petitioner moved to Ms. Polak's residence on or about July 28, 2004.

Ms. Polak testified that she was a family friend and that Petitioner moved to her home at

the end of July 2004.  She claimed that Petitioner placed fourteen calls to his parole officer from

her home on August 3 in order to have his tether attached.  She also claimed that, sometime at

the beginning of August, she personally talked with Petitioner's parole officer and informed the

officer that Petitioner could be tethered at her address.  When the prosecutor pointed out on

cross-examination of Ms. Polak that all of the calls listed on her telephone bill for August 3 were

only a minute in duration, Ms. Polak testified that the record of her conversation with the parole

officer could be on the following bill.

Petitioner testified at the hearing that he and his mother informed Mr. Pollard on July 27, 2004, that he would be moving to Ms. Polak's residence.  According to Petitioner, Mr. Pollard had said to call him and to give him the address, as well as information about his job.  Petitioner claimed that he moved to Ms. Polak's home on July 31 and that he placed calls to Mr. Pollard on August 2, 3, and 4.  He claimed that, although Mr. Pollard did not answer his calls, he left messages regarding his address, telephone number, and job.  He testified that he finally spoke with Mr. Pollard over the telephone on August 5 after he complained to Pollard's supervisor that Pollard was not answering his phone.  He informed Pollard then that he was staying with Ms. Polak in Canton.  Petitioner further testified that, after he finished talking with Pollard and hung up the telephone, Pollard called back and spoke with Ms. Polak.

Mr. Pollard testified on rebuttal that Petitioner did not provide him with his address in telephone messages before August 5, 2004.  He denied speaking directly with Petitioner on August 5, 2004, and he claimed that Petitioner did not provide him with an address during a telephone conversation on that date.  He maintained that all he needed was Petitioner's address and that he received none of the necessary information from Petitioner on the fifth of August, and he did not recall talking to Ms. Polak that day.

At the conclusion of the testimony, defense counsel argued to the trial court that Petitioner had fulfilled his obligation and was not guilty of violating the tether requirement.  The trial court stated that the case was basically a credibility issue and that the court believed Mr. Pollard because Pollard had no reason to lie.  The court determined that Mr. Pollard did not receive information concerning Petitioner's address by August 5 and that Petitioner was guilty of violating the terms of probation.  On December 16, 2004, the trial court revoked Petitioner's

4

probation and sentenced him to imprisonment for twenty-three months to ten years for receiving and concealing a stolen firearm. The Court sentenced Petitioner to time served in the other case.

On appeal, Petitioner argued through counsel that the prosecutor did not establish by a preponderance of the evidence that he violated the terms of probation. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Schuh*, No. 268913 (Mich. Ct. App. Apr. 19, 2006). On September 26, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Schuh*, 477 Mich. 869 (2006) (table). The state supreme court denied reconsideration on January 29, 2007. *See People v. Schuh*, 477 Mich. 1009 (2007) (table).

**B. The First Habeas Petition, State Collateral Proceedings, and Amended Petition**

Petitioner filed his first habeas corpus petition in this Court on April 2, 2008. Shortly thereafter, he moved to stay his case while he pursued additional state court remedies. On August 8, 2008, the Court granted Petitioner's motion for a stay and closed this case for administrative purposes.

On October 15, 2008, Rodney Pollard signed an affidavit in which he stated that Petitioner called him on August 5, 2004, to inform him of a place to be tethered. Petitioner subsequently returned to state court and filed a motion for relief from judgment in which he raised his habeas claims, which allege actual innocence, ineffective assistance of trial and appellate counsel, judicial bias, due process violations, perjured testimony, insufficient evidence, *ex parte* communications, and prosecutorial misconduct. The prosecutor argued in an opposing brief that Petitioner's claims lacked merit and that Petitioner had not shown "good cause" for his failure to raise the issues on appeal. More specifically, the prosecutor argued that the trial court

5

was fair and impartial, that Mr. Pollard's affidavit was consistent with his testimony at the revocation hearing and did not support Petitioner's claim of innocence, that the trial court's alleged *ex parte* communications were not improper and did not prejudice the defense, that Petitioner's due process claims lacked merit, and that there was no exculpatory evidence which the prosecution could have provided to Petitioner.

On January 15, 2009, the trial court held a brief hearing on Petitioner's motion and listened to the prosecutor's arguments in opposition to the motion. The trial court denied Petitioner's motion, although neither Petitioner, nor a defense attorney, was present at the hearing to argue Petitioner's point of view.

In a subsequent written order, the trial court stated that it was denying the motion for the reasons stated on the record at the hearing on January 15, 2009. However, at the hearing, the court merely stated that it was denying the motion for the reasons given in the prosecutor's brief.

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Schuh*, No. 294868 (Mich. Ct. App. Dec. 16, 2009). On September 9, 2010, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Schuh*, 488 Mich. 852 ( 2010) (table).

On October 8, 2010, Petitioner filed an amended habeas corpus petition in this Court and a motion to re-open his federal case. The Court granted Petitioner's motion and ordered Respondent to file a responsive pleading. Respondent subsequently argued in an answer to the amended petition that Petitioner's claims lacked merit or were not cognizable on habeas corpus review. The Court subsequently appointed counsel for Petitioner and permitted the parties to

make oral arguments based upon the record on April 23, 2012.  The Court took no evidence.

Thereafter, the parties filed supplemental briefs.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state courts' adjudications of

his claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's

majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly

established federal law "if the state court identifies the correct governing legal principle from

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id*. at 413.  To obtain the writ of habeas corpus, Petitioner must show that the

state court rulings were "so lacking in justification" that they resulted in errors "well understood

and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at

786-87.

Petitioner presented his sufficiency-of-the-evidence claim to the state courts on direct

7

review.  His appeal was denied for lack of merit.  Petitioner presented his other habeas claims to

the state courts on collateral review.  None of the state courts' written orders are accompanied by

a reasoned decision on the merits of Petitioner's claims, but the state trial court did say that it

was rejecting Petitioner's claims for the reasons given by the prosecutor.  In the absence of any

indication that the state courts applied a procedural bar to consideration of Petitioner's claims,

this Court presumes that the state courts adjudicated Petitioner's claims on the merits.

*Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 784-85 (2011).

### III.  Discussion

### A.  Due Process

The Court begins its discussion with Petitioner's primary due process argument.

Petitioner faults the trial court for relying on Rodney Pollard's testimony at the 2004 probation

violation hearing, despite Mr. Pollard's subsequent affidavit, which states that Petitioner called

him on August 5, 2004, to inform him of a place to be tethered.[1]

### 1.  Clearly Established Federal Law

"The Due Process Clause of the Fourteenth Amendment imposes procedural and

substantive limits on the revocation of the conditional liberty created by probation."  *Black v.*

*Romano*, 471 U.S. 606, 610 (1985) (citing *Bearden v. Georgia*,  461 U.S. 660, 666 and 666 n. 7

(1983)).  "In identifying the procedural requirements of due process, [the Supreme Court has]

---

[1]  Petitioner's other due process claims concern alleged violations of state procedures.
Petitioner contends that the trial court did not issue a written order directing him to become
tethered and improperly considered his failure to obtain a job and his failure to pay fines.  The
Court declines to grant relief on the basis of these claims because "it is not the province of a
federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v.*
*McGuire*, 502 U.S. 62, 67-68 (1991).

observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Id.* at 611 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 784 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 479-80 (1972)). The touchstone of substantive due process is "fundamental fairness." *Gagnon v. Scarpelli*, 411 U.S. at 790; *see also Bearden v. Georgia*, 461 U.S. at 666 and 666 n.7.

### 2. Application

At the probation revocation hearing on November 18, 2004, the trial court considered whether Petitioner had violated the trial court's order to be tethered to an address other than his parents' home by August 5, 2004. Petitioner testified that he left messages for probation officer Rodney Pollard, informing Pollard of an address where he could be tethered, and that he spoke with Pollard on August 5, 2004. Mr. Pollard testified at the hearing that Petitioner did not call him or inform him of a permanent address to which he could be tethered by August 5, 2004. Mr. Pollard denied speaking directly with Petitioner on August 5, 2004, and he claimed that Petitioner did not provide him with an address on that date. Mr. Pollard also did not recall his supervisor transferring a telephone call to him from Petitioner at approximately 8:05 a.m. on August 5, 2004.

In an affidavit signed on October 15, 2008, Mr. Pollard wrote:

The probationer called me on 8/5/04, the date of the scheduled court hearing, to inform me of a place to be tethered. The probationer was informed that he needed to appear in court for the hearing.

Affidavit of Rodney Pollard, page 2 (attached to the Amended Petition for Writ of Habeas

9

Corpus).

Mr. Pollard's affidavit tends to contradict his testimony at the revocation hearing where he said that he did not speak with Petitioner on August 5, 2004, and was not informed of a place where Petitioner could be tethered. The trial court nevertheless accepted the prosecutor's argument that Mr. Pollard's affidavit was consistent with his testimony at the revocation hearing. This was an unreasonable determination of the facts. Consequently, "the relitigation bar of § 2254(d) poses no obstacle to this Court's review" of Petitioner's underlying due process claim. *Rice v. White*, 660 F.3d 242, 257 (6th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2751 (2012).

The trial court gave short shrift to Petitioner's due process rights. When Petitioner first raised the matter of Rodney Pollard's affidavit in his motion for relief from judgment, the trial court scheduled oral arguments, but apparently only the prosecutor was permitted to attend the hearing. Petitioner was not present, nor represented by an attorney, and he claims that the trial court neither appointed counsel for him, nor arranged for him to attend the hearing to argue his claims in his own behalf. Furthermore, the trial court barely acknowledged Petitioner's arguments at the hearing. It merely stated that Petitioner's motion was "denied on each and every ground raised in his motion for the reasons responded to on each and every ground by the People in their brief." (Tr. Jan. 15, 2009, at 5.)[2]

The trial court also failed to acknowledge Rodney Pollard's affidavit, even though at the probation violation hearing in 2004, the court credited Petitioner with calling Mr. Pollard on

---

[2] The prosecutor argued in its brief that Mr. Pollard's affidavit was consistent with his testimony at the probation revocation hearing.

10

August 5, 2004.  The trial court's failure to give greater consideration to Rodney Pollard's affidavit was fundamentally unfair because Petitioner's probation was revoked on the basis of Pollard's prior testimony that Petitioner did not inform him of a place to be tethered on or before August 5, 2004.  The trial court could have held an evidentiary hearing to enable Petitioner to develop the facts and to determine from Mr. Pollard the precise meaning of his affidavit.  At a minimum, the trial court could have allowed Petitioner to attend the hearing and argue in his own behalf.

By failing to afford Petitioner an opportunity to argue and develop the facts, the trial court violated Petitioner's due process right to "an informal hearing structured to assure that the finding of a [probation] violation [was] based on verified facts and that the exercise of discretion [was] informed by an accurate knowledge of the [probationer's] behavior."  *Morrissey*, 408 U.S. at 484.[3]  This Court is precluded from holding an evidentiary hearing because the trial court adjudicated the merits of Petitioner's claim, and "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster,* __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011)

In conclusion, the trial court's ruling on Petitioner's claims did not "subserve the ends of justice and the best interests of both the public and the defendant."  *Tiitsman v. Black*, 536 F.2d 678, 681-82 (6th Cir. 1976) (quoting *Burns v. United States*, 287 U.S. 216, 221 (1932)).  This Court therefore grants Petitioner a conditional writ of habeas corpus.

## B.  Actual Innocence

---

[3]  Although *Morrissey* involved a revocation of parole, revocation of probation is "constitutionally indistinguishable from the revocation of parole."  *Gagnon v. Scarpelli*, 411 U.S. at 782 n.3.

For the sake of completeness, the Court will proceed to address Petitioner's remaining claims.  His first claim alleges that he is actually innocent of violating the terms of probation.  In support of this claim, Petitioner points to Mr. Pollard's 2008 affidavit in which Mr. Pollard states that Petitioner called him on August 5, 2004, to inform him of a place to be tethered.  As noted above, this statement tends to contradict Mr. Pollard's testimony at the revocation hearing that Petitioner did not communicate directly with him by telephone on August 5, 2004.  The Supreme Court, however, stated in *Herrera v. Collins*, 506 U.S. 390, 404 (1993), that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."

Furthermore, it is questionable whether the "actual innocence" doctrine even applies to a noncapital case such as this one.  *See Gibbs v. United States*, 655 F.3d 473, 477-78 (6th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 1909 (2012).  Even if the doctrine is applicable to noncapital cases, Petitioner is contesting a disputed factual issue regarding whether he reported his address to Mr. Pollard on or before August 5, 2004.  "As a general rule, the [actual innocence] inquiry does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'"  *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  *Herrera v. Collins*, 506 U.S. at 400.  The Court therefore declines to grant relief on the basis of Petitioner's claim of actual innocence.

**C.  Judicial Bias**

Petitioner alleges next that the state trial court was biased and unable to render a fair judgment in his case.  Although the Court agrees that the trial court's inelegant remarks were freighted with vernacular foreign to most judicial pronouncements, the Court finds for the following reasons that the trial court's remarks did not rise to the level of a constitutional violation.

### 1.  Clearly Established Federal Law

Petitioner had a constitutional right to a fair hearing "before a judge with no actual bias against [him] or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  But a judge's misconduct "may be 'characterized as bias or prejudice' only if 'it is so extreme as to display clear inability to render fair judgment,' so extreme in other words that it 'display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible.'"  *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (quoting *Liteky v. United States*, 510 U.S. 540, 551, 555 (1994)).[4]  The question is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused."  *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

### 2.  The Trial Court's Comments

Petitioner alleges that the trial court's comments at various court hearings exhibited judicial bias.  For example, at the July 2004 probation violation hearing, the trial court said:

---

[4]  Although *Liteky* "addresses the statutory recusal standards for federal judges, *see* 28 U.S.C. § 455, [the Sixth Circuit] has relied on the decision in assessing judicial-bias claims under the Due Process Clause . . . ."  *Lyell v. Renico*, 470 F.3d at 1186 (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)).

> The whole issue is whether you left the home confinement agreement.  If . . .
> you're willing to have [assistant public defender] Nieman represent you and Mr.
> Pollard's ready to go, that's what we'll do.  We'll just have [the hearing] today.  I
> mean, frankly it ought to be pretty simple.  I mean he's gonna' testify that you
> weren't there.  Hearsay is admissible.  I'm gonna' listen to the hearsay that he's
> gonna' tell me and you're gonna' tell me whatever you're gonna' tell me but I'm
> gonna' tell you right now, as between the two of you, I'm believin' him.  So that's
> how it's comin' out.  You can have the hearing but that's the way it's gonna'
> come out.

(Tr. July 22, 2004, at 9-10.)  Although these comments suggest that the trial court was
predisposed to ruling against Petitioner, the court ultimately found Petitioner not guilty of
violating the home-confinement agreement.  Thus, the comments on July 22, 2004, are not a
basis for concluding that the trial court was prejudiced against Petitioner.

   The next hearing was held on August 5, 2004.  Petitioner had not been tethered, and a
new felony warrant had been issued for his arrest.  The trial court stated at the hearing that it
intended to have Petitioner taken into custody on the felony warrant and that Petitioner would
have to address the new warrant.  The court then said that it wanted the probation department to
prepare a supplemental report "so when he comes back all our ducks will be in a row and then
we'll send you off to incarceration land for failing to comply."  (Tr. Aug. 5, 2004, at 6.)

   This comment tends to show that the trial court had already decided to send Petitioner to
prison for violating the conditions of probation, but the court appears to have been relying on the
new felony warrant and Petitioner's poor conduct on probation.  Even if the trial court was
"exceedingly ill disposed" toward Petitioner, it was not recusable for bias or prejudice as a result
of what the court learned during the course of the proceedings.  *Liteky v. United States*, 510 U.S.
at 550-51.

   Furthermore, the trial court displayed no bias at the subsequent probation violation

hearing on November 18, 2004. Although the court ultimately found Petitioner guilty of not reporting an address to which he could be tethered, the court based its decision on the determination that probation officer Pollard was more credible than the defense witnesses because Pollard had no reason to lie. The court also noted that defense witness Deborah Polak had been unable to specify when she talked with Mr. Pollard to verify Petitioner's new address. The court concluded from Polak's testimony that she talked with Mr. Pollard subsequent to the time at issue. (Tr. Nov. 18, 2004, at 36-38.)

The trial court may have been impatient and frustrated with Petitioner, but "judicial rulings alone almost never constitute a valid basis for a bias or partiality" claim, and judicial remarks "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. at 555.

Here, the trial court's comments fail to demonstrate a clear inability to render fair judgment or a deep-seated favoritism or antagonism that made fair judgment impossible. The Court therefore declines to issue the writ on the basis of Petitioner's claim of judicial bias.

## D. Alleged Perjury

Petitioner asserts that his conviction for violating the conditions of probation was based on erroneous facts and on Rodney Pollard's perjured testimony. According to Petitioner, Mr. Pollard testified falsely at the hearing on July 22, 2004, when he said that Petitioner's parents did not want him living with them or tethered to their residence.

Mr. Pollard informed the trial court at the hearing on July 22, 2004, that he personally spoke with Petitioner's parents and landlord and that neither the landlord, nor Petitioner's

mother, wanted Petitioner living at the residence.  There is no indication that Mr. Pollard was intentionally deceiving the court and, therefore, no basis for concluding that Pollard was committing perjury.

Petitioner also alleges that Pollard testified falsely at the November 18, 2004, hearing when he claimed that Petitioner did not notify him of his address by August 5, 2004.  This allegation is more troubling because, as previously noted, Mr. Pollard stated in a subsequent affidavit that Petitioner called him on August 5, 2004, to inform him of a place to be tethered. Nevertheless, mere inconsistencies, contradictions, and changes in a witness's testimony do not establish perjury.  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citing *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993) (citing *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991)).  The Court therefore declines to grant relief on the basis of Petitioner's perjury claim.

**E.  Sufficiency of the Evidence**

Petitioner alleges next that the evidence was insufficient to support the trial court's finding that he violated the conditions of probation.  Petitioner states that the trial court found him guilty of violating the terms of probation solely on the basis of Rodney Pollard's testimony and without providing any reasons for not believing him and his witnesses.

There must be sufficient evidence to support a state court's finding that the defendant violated the conditions of his probation, *see Black v. Romano*, 471 U.S. at 615-16, but the right to proof beyond a reasonable doubt does not apply to probation revocation proceedings.  *United States v. Knights*, 534 U.S. 112, 120 (2001).  The right to due process is violated when the finding that the petitioner violated the conditions of probation was "totally devoid of evidentiary

16

support." *Douglas v. Buder*, 412 U.S. 430, 432 (1973).

Mr. Pollard testified at Petitioner's revocation hearing that Petitioner did not provide timely notice of a permanent address to which he could be tethered. This testimony was sufficient evidence to support the charge that Petitioner did not comply with the trial court's order to make himself available for tether placement by August 5, 2004. Although Mr. Pollard's affidavit in 2008 tends to contradict his testimony at the revocation hearing in 2004, "[a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The Court therefore declines to grant relief on the basis of Petitioner's challenge to the sufficiency of the evidence at his revocation hearing.

**F.  *Ex Parte* Communications**

Petitioner alleges that the trial court engaged in *ex parte* communications with probation officer Rodney Pollard, the prosecutor, and deputy sheriffs. Petitioner lists three instances of alleged *ex parte* communications: (1) the trial court's comment on August 26, 2004, that one way to look at this case was the way Mr. Pollard looked at it, which was that there was a new violation of probation for failure to tether; (2) the prosecutor's comment to another prosecutor on or before December 2, 2004, that Petitioner would be going to prison for the probation violation; and (3) the trial court's disclosure to a deputy sheriff on or before December 16, 2004, that the court would be sentencing Petitioner to prison. Petitioner contends that the *ex parte* proceedings deprived him of his right to be present, his right to an impartial judge, and his right to effective assistance of counsel.

17

The trial court's comments on August 26, 2004 appear to have been based on Mr. Pollard's recommendation on whether Petitioner should be charged with a new violation of violating probation for failing to tether or whether the trial court should proceed on the original charge of violating probation.  Pollard's nonadversarial communication with the trial court was not a critical stage of the proceedings and did not violate Petitioner's constitutional rights. *United States v. Johnson*, 935 F.2d 47, 49-50 (4th Cir. 1991).

As for the trial court's alleged communications with the prosecutor and deputy sheriffs concerning Petitioner's sentence, there is nothing in the record to indicate that the trial court's conversations prejudiced Petitioner in any way.  The trial court stated at the sentence proceeding that it was sentencing Petitioner on the basis of his "extremely poor" behavior on probation.  The court noted that Petitioner had failed to complete the residential substance abuse program.  The court also opined that Petitioner had made very little effort to become gainfully employed, that he did not make any payments toward his assessment, that he reported sporadically to probation, and that he continued to lack a stable residence.  (Tr. Dec. 16, 2004, at 5-6.)  Because there is no basis for concluding that the trial court relied on *ex parte* information of "dubious accuracy" or on a court officer's "subjective impressions" that had no basis in fact, the Court declines to grant relief on Petitioner's claim concerning *ex parte* communications.  *United Sates v. Christman*, 509 F.3d 299, 304, 310 (6th Cir. 2007).

## G.  The Prosecutor

Petitioner alleges that the prosecutor failed to disclose exculpatory information to him and his attorney.  The information in question consists of audio recordings of voice mail messages that Petitioner supposedly left for Mr. Pollard in early August 2004, informing him of

18

a place to be tethered.

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* applies to situations involving "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

> "*Brady* obviously does not apply to information that is not wholly within the control of the prosecution. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose."

*Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal citations and quotations omitted)).

The State has determined that no audio recordings or transcripts were made of the voice mail messages that Petitioner supposedly left for Mr. Pollard in early August of 2004, and the telephone messages themselves are no longer available. Whether the messages were actually exculpatory, however, is unclear, and even if they were, Petitioner was aware of the essential facts permitting him to take advantage of any exculpatory information. He could have attempted to acquire the information in question directly from Mr. Pollard. Thus, Petitioner has failed to state a true *Brady* claim. To the extent that Petitioner is blaming the prosecution for not preserving potentially exculpatory evidence, his claim lacks merit because he has not shown that the prosecution acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002).

**H.  Trial Counsel**

Petitioner alleges that his trial attorney was ineffective for failing to call his former girlfriend, Ayrika Wortinger, as a witness at the probation violation hearing.  Petitioner also alleges that trial counsel was ineffective for allowing a student intern to represent him at the probation violation hearing.  Finally, Petitioner claims that trial counsel was ineffective for failing to investigate his claims that he advised Mr. Pollard of the place where he could be tethered.

**1.  Clearly Established Federal Law**

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating an ineffective-assistance-of-counsel claim.  *Cullen v. Pinholster*, 131 S. Ct. at 1403.  Under *Strickland*, an attorney is constitutionally ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. at 687.

To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.  To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland v. Washington*, 466 U.S. at 693).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem,

20

review is 'doubly' so." *Id*. at 788 (internal and end citations omitted).

### 2.  The Failure to Call Ayrika Wortinger

Petitioner contends that the failure to call Ayrika Wortinger as a witness at his probation violation hearing deprived him of a substantial defense and prejudiced him.  According to Petitioner, Ms. Wortinger would have testified that Petitioner informed Mr. Pollard where he was living and that she witnessed Petitioner leave messages for Pollard.  Petitioner claims that this testimony would have proved that he provided the necessary information for acquiring a tether.

Ms. Wortinger's testimony would have corroborated Petitioner's version of the events and should not be dismissed as merely cumulative evidence.  *English v. Romanowski*, 602 F.3d 714, 727 (6th Cir. 2010).  But her testimony would have been similar to Deborah Polak's testimony that Petitioner called his probation officer and reported his address.  And even though Ms. Wortinger apparently was prepared to testify at the revocation hearing on November 18, 2004, exhibits attached to the amended habeas petition indicate that she became upset during the hearing and was asked to leave the courtroom for being loud and improperly attired.  Defense counsel could have made a strategic decision not to call Ms. Wortinger on the basis that she would not have made a favorable impression on the trial court and would not have been a good witness.  The failure to call Ms. Wortinger as a witness did not amount to deficient performance and did not prejudice the defense.

### 3.  Use of an Intern

Petitioner alleges that his trial attorney was ineffective for allowing an intern to represent him at the revocation hearing.  The intern, however, was supervised by an assistant public

defender, and he did a commendable job in representing Petitioner.  He cross-examined

prosecution witness Rodney Pollard, and he elicited important testimony from Petitioner and the

other defense witnesses.  Petitioner has not shown that the use of the intern prejudiced him.  The

Court therefore concludes that trial counsel was not ineffective for using an intern.

### 4.  Failure to Investigate

Petitioner contends that, if his attorney had investigated his allegations, he could have

obtained Rodney Pollard's notes and voice mail messages and interviewed Pollard's supervisor,

who supposedly transferred Petitioner's call to Pollard on August 5, 2004.  Attorneys have "a

duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary," *Strickland v. Washington*, 466 U.S. at 691, but, without Pollard's

notes or voice mail messages, it is difficult to say whether Petitioner was prejudiced by the

alleged failure to investigate.  The notes and voice mail messages may have confirmed Pollard's

testimony on November 18, 2004, that Petitioner did not inform him of a place to be tethered.

The Court therefore rejects Petitioner's claim that his attorney was ineffective.

## I.  Appellate Counsel

Petitioner alleges that his appellate attorneys were ineffective for failing to raise the

issues that he has presented in his amended habeas petition.

> Failure of appellate counsel to raise an issue on appeal can amount to
> constitutionally ineffective assistance.  *McFarland* [*v. Yukins*, 356 F.3d 688, 710
> (6th Cir. 2004)].  Yet, counsel has no obligation to raise every possible claim and
> "the decision of which among the possible claims to pursue is ordinarily entrusted
> to counsel's professional judgment."  *Id*.  An appellate attorney is not required to
> raise a non-meritorious claim.  *See Wilson v. Mitchell*, 498 F.3d 491, 514–15 (6th
> Cir. 2007).

*Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011), *petition for cert. filed*, No. 11-9704

(U.S. Apr. 3, 2012). To prove that his appellate attorneys were ineffective, Petitioner must show (1) that the attorneys were objectively unreasonable in failing to discover and argue Petitioner's claims on appeal and (2) a reasonable probability that he would have prevailed were it not for his attorneys' unprofessional errors. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

Rodney Pollard did not sign his affidavit until more than a year and a half after Petitioner's direct appeal came to an end. Therefore, appellate counsel could not have raised Petitioner's primary due process claim on appeal. Counsel did raise Petitioner's sufficiency-of-the-evidence claim on appeal, and Petitioner's other claims lack merit for the reasons given above. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). The Court therefore declines to grant relief on the basis of Petitioner's claim regarding appellate counsel.

## IV.  Conclusion

For the reasons given above, the state trial court's decision was based on an unreasonable determination of the facts. In addition, the trial court's failure to give due consideration to Rodney Pollard's affidavit stating that Petitioner called him to inform him of a place to be tethered was fundamentally unfair and violated Petitioner's right to due process. The state court's decision was contrary to principles set forth in *Black v. Romano*, *Bearden v. Georgia*, *Gagnon v. Scarpelli*, and *Morrissey v. Brewer*.

Accordingly,

IT IS ORDERED that the amended petition for writ of habeas corpus [dkt. #18] is conditionally **GRANTED**. The State shall release Petitioner unless, within sixty days of the date

23

of this order, it provides Petitioner with a hearing to determine whether he can be safely released

from custody under the supervision of a state probation officer.


                              s/Gerald E. Rosen
                              Chief Judge, United States District Court

Dated:  August 28, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on August 28, 2012, by electronic and/or ordinary mail.

                              s/Shawntel Jackson for Ruth A. Gunther
                              Case Manager